UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| HEATHER W.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 4:20cv87 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(a), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act

   through December 31, 2022.

2.  The claimant has not engaged in substantial gainful activity since September 23, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and osteoarthritis of the right knee (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch. She can never climb ladders, ropes, or scaffolds, never crawl, and never work at unprotected heights.

6.  The claimant is capable of performing past relevant work as a collector, admitting clerk, and leasing agent. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from September 23, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 20-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on December 22, 2021. On February 1, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on April 1, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

3

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Plaintiff, who was born in 1966, testified that she has been working ever since grade school by babysitting, having a paper route, and then lying about her age so that she could work at a Hardees fast food restaurant. (Tr. 55-56). She has been steadily working since 2004 until her job was terminated because she missed so many days due to her illness. (Tr. 56). She received short-term disability pursuant to the Family Medical Leave Act (FMLA). (Tr. 57).

Plaintiff alleges that her impairments include: recurrent headaches and migraines, recurrent spells of dizziness and near syncope, lower back pain with sciatica, unstable gait and tendency to fall, concentration difficulties, and short-term memory loss. (Tr. 332, 343). She had an EEG test which was determined to be an abnormal ambulatory EEG and there were spike wave

discharges seen to account for her symptoms. (Tr. 337). A digital spike analysis of the EEG report was also described as abnormal with sharp epileptiform discharges observed. (Tr. 339). A video-electronystagmography exam was also abnormal and showed involvement of the central nervous system. (Tr. 353). An MRI conducted in August 2017 shows "There is noted on image 16 of series 6 and 7 soft tissue density to the right of midline that is deforming the right side of the dural sac and would be compressing nerve roots. This has progressed since the patient's previous study." (Tr. 560). Plaintiff has failed to respond to a variety of non-opioid treatments including a trial of a spinal cord stimulator. (Tr. 386). Her discomfort is exacerbated by activity and diminished by rest and Dr. Crecelius believed that surgical intervention would not be helpful. (*Id*.) She also has chronic right knee pain. (Tr. 374). She has failed to respond to extensive treatment for her back and leg pain over the years, although hydrocodone helps some. (Tr. 430). She meets the criteria for chronic opioid management due to her significant evidence of disease, has a low risk of abuse, and has failed to respond to conservative therapy. (*Id*).

In support of remand, Plaintiff first argues that the ALJ erred in finding that the opinions of the non-examining state agency medical consultants were persuasive. Plaintiff notes that the State agency reports were dated June 14, 2018 and September 12, 2018 (Tr. 74, 84, 98, 110), and thus the consultants did not have before them Plaintiff's medical records from the latter part of 2018 to 2020 (Tr. 584-738). Plaintiff specifically notes that the State agency consultants did not have office treatment records from February 5, 2019 to May 29, 2019, from the Indiana Neurology Special Care. (Tr. 584-594). These are reports from Dr. Albert C. Lee which demonstrated an abnormal baseline EEG study showing a sharp wave seizure activity during the recording to account for the patient's symptoms. (Tr. 587). This test was performed on May 1,

2019. *Id*. Dr. Lee also performed an electrocardiogram baseline study report which was also abnormal and also showed a sharp wave seizure activity during the recording. (Tr. 592). Thus, the State agencies did not see two abnormal EEG reports.

Plaintiff also points out that the State agency consultants did not have the office treatment records from July 31, 2018 to June 20, 2019 from IU Health. (Tr. 595-658). These records were primarily physical therapy records. The conclusion from the physical therapist was that Plaintiff had chronic low back pain with radiculopathy, decreased impaired lumbar range of motion and flexibility, decreased core strength and pain leading to altered function. (Tr. 595-596). However, the physical therapy did not provide any relief and she was subsequently discharged from physical therapy. (Tr. 595-596). There were two positive straight-leg raising tests, one in January 2018 and one with a positive straight-leg raising at 45 degrees in November 2018. (Tr. 608, 629). In July 2018, Nurse Practitioner Kayla A. Miller, stated that Plaintiff had unfortunately failed to respond to a variety of non-opioid treatments including a trial of a spinal cord stimulator, that the patient characterizes her symptoms as burning, and with medication the pain level is 3-4 out of 10 and 7-8 without medication. (Tr. 638). Nurse Practitioner Miller states that without medication, the patient would not be able to do many activities. *Id*.

In response, the Commissioner argues that Plaintiff relies on diagnoses and diagnostic test results without citing to any evidence of actual functional limitations stemming from these impairments that the ALJ did not already include in his RFC determination. However, Plaintiff has pointed to eight exhibits that the non-examining physicians did not have at the time of their review, which support additional functional limitations. These exhibits include abnormal reports from Indiana Neurological Specialty Care and Dr. Albert C. Lee's continuing and regular

6

treatment of headaches, recurrent spells of dizziness, near syncope, neck pain, neuralgia, and low back pain with sciatica, and positive straight leg raising tests. Reports from IU Health Arnett and Dr. Bentinganan in 2019 and 2020 repeatedly state the following: over the counter medications were without benefit; chiropractic manipulation only provided transient benefit; physical therapy without benefit; Dr. Crecelius stated that surgical procedures would not be helpful; a lumbar RF was not helpful; a lumbar epidural injection was not helpful; she was not able to tolerate tramadol; a TENS unit was without benefit; and a spinal cord stimulator trial was without benefit. Also an abnormal report in September 2019 of electrodiagnostic studies and an MRI of her lumbar spine is in the record.

Additionally, Plaintiff testified that she had a sedentary job for many years as a billing clerk and she was unable to maintain that job and was finally terminated because she missed too much work due to her impairments and doctor appointments. Her employer made an independent decision that she was eligible for short-term disability and long-term disability. In her testimony, Plaintiff describes low back pain, inability to stand for more than fifteen minutes and only able to sit for thirty minutes before she has to lie down, can only walk a half a block, always in pain, with medication her pain level is at six and without medication her pain level is ten, she is fatigued constantly, takes two showers a day to relieve back pain, needs frequent breaks every half hour, gets help from her son, has pain in her back, hips and legs, has migraines one to three times a week that can last all day, often has to take a nap, feels dizzy and light headed, sees Dr. Lee at least once a month, has throbbing and stabbing pain in her knees, bone spurs, bilateral carpal tunnel syndrome for which surgery did not help a great deal, and panic attacks twice a week. Third party reports from her son also corroborate Plaintiff's claims of pain and inability to

function.

Plaintiff also contends that the ALJ failed to give proper weight to Dr. Bentinganan's opinions. Dr. Bentinganan had been treating Plaintiff since April 2018 and gave a detailed, four-page report on Plaintiff's functional capacity. (Tr. 659-664). Plaintiff contends that the ALJ did not explain or discuss this report.

The Commissioner, however, contends that the ALJ fully explained why he did not find that opinion persuasive. That is, the ALJ held that Dr. Bentinganan's conclusions were not supported by her own examination records, nor were they consistent with multiple records showing Plaintiff had normal strength, sensation, reflexes, balance, coordination, and gait. However, as Plaintiff argues, this criteria does not address the impairments that Plaintiff claims render her disabled. Dr. Bentinganan's report states that she has been Plaintiff's attending physician since April 20, 2018. (Tr. 659). The report also gives detailed explanation of diagnosis, prognosis, symptoms, location and severity of pain, the effects on Plaintiff's functional capacity, the most significant clinical findings and objective signs, and the side effects of medications. *Id*. Dr. Bentinganan went to great lengths to write in detail the answer to each question about Plaintiff's condition. Dr. Bentinganan answered some of the proposed questions with checkmarks, but she also made comments concerning details about Plaintiff's conditions on different lines, as in numbers 15 and 20. Dr. Bentinganan gave not one, but twenty independent medical source statements. (Tr. 659-662).

Neither the Commissioner nor the ALJ gave a reasonable or plausible explanation as to exactly why any of Dr. Bentinganan's medical source statements were inconsistent with her records and cited no records to contradict them except the non-examining State agency reports.

On April 20, 2020, in responding to Cigna Insurance about Plaintiff's long term disability application, Dr. Bentinganan stated as follows:

> 2) Page 4 – the above deficits have not changed from prior year nor has her medical conditions have [sic] changed. The conditions under which her disability was granted and for which conditions they have been granted have not changed. Any correspondence I have received has been answered. If such phone/fax attempts were made, they have been responded to.

(Tr. 13). Dr. Bentinganan's statement above refers to the medical reports describing Plaintiff's impairments provided to Cigna Insurance. This confirms Dr. Bentinganan's report that Plaintiff remained unable to maintain work and that her disorders had not improved, but worsened.

In her reply, Plaintiff reiterates that she is not, as the Commissioner argues, referring to "alternative interpretations of the record." Rather, Plaintiff is asking that the entire record be considered by the ALJ. Plaintiff notes again that no good reasons were given for rejecting the medical records she submitted, including the many Indiana Neurology Specialty Care reports from Dr. Lee, the IU Health Arnett records and reports from Dr. Bentinganan and nurse practitioner Kayla A. Miller, records from physical therapy of her decreased lumbar range of motion, flexibility and decreased core strength, the several positive straight leg raising tests, the abnormal electrocardiogram baseline study reports, the abnormal electrodiagnostic study, the MRI of the lumbar spine showing a left lateral disc bulge at L3-L4 and facet and ligament hytropathy at L4-L5, the abnormal ambulatory EEG reports, the abnormal nerve conduction studies, and the abnormal VENG study.

With respect to the Commissioner's argument that Plaintiff has not identified objective medical evidence supporting greater limitations than the ALJ's RFC assessment, Plaintiff notes that the ALJ's RFC did not take into account anything more than the two opinions of

9

non-examining doctors early in the medical evidence history. The ALJ's RFC did not take into account the medical source statements of Dr. Crecelius, Dr. Lee, and Dr. Bentinganan and the medical evidence that supported their statements and opinions. No records or medical evidence refutes Dr. Bentinganan's twenty medical source statements that she provided as Plaintiff's attending physician. (Tr. 659-662).

The only reference where the ALJ discounts the medical evidence in the record is when he states that the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence of record (which Plaintiff correctly notes is boilerplate language used frequently in ALJ opinions). (Tr. 23). In the next paragraph, the ALJ provides reasons for why he discounts the medical evidence by discussing the negative medical findings related to Plaintiff's back and knee pain and referring to notes that indicate she has normal range of motion, normal strength and motor function, intact sensation, normal balance and coordination, stable gait, is alert and oriented, and has normal memory. *Id*. Plaintiff argues that the ALJ's explanation is not sufficient to warrant ignoring all of the medical evidence of the attending physicians who have treated her for many years as opposed to the opinions from early in the medical evidence history of the two non-examining State agency doctors. Plaintiff contends that the ALJ's explanation is insufficient.

Plaintiff also argues that the ALJ failed to properly consider the combined effect of her various impairments. Although the ALJ determined that three of Plaintiff's impairments were severe, he failed to determine that the other impairments, which may not meet a listing, but in combination could determine that Plaintiff was unable to work at the SGA level. 20 CFR 416.929(d)(1). The ALJ determined that Plaintiff has severe impairments of degenerative disc

disease of the lumbar spine, obesity, and osteoarthritis of the right knee. (Tr. 20). However, the record reveals a long list of other impairments which, in combination with the severe impairments, would interfere with her ability to maintain a full time job. An active "problem and diagnosis" list from the IU Health records include: essential hypertension, hypothyroidism, anxiety, migraines, hyperlipidemia, tobacco use disorder, carpal tunnel syndrome, restless leg syndrome, anemia, lateral epicondylitis, vitiligo, thyroid goiter, type two diabetes mellitus, transient ischemic attack, obstructive sleep apnea, hypersomnia, hyperpiesia, periodic limb movement, degenerative arthritis of the lumbar spine, gastroesophageal reflux disease, herniation of lumbar intervertebral disc, obesity, and lumbar radiculopathy. (Tr. 378-379). Plaintiff also contends that the ALJ failed to consider the effects of medication which are listed in the same exhibit. (Tr. 379-80). Each of these impairments contribute to the overall ability of Plaintiff to function.

     Plaintiff further argues that the ALJ failed to take into account Plaintiff's migraines for which she was treated by Dr. Lee on a regular basis once every month from 2017 to 2020. (Tr. 331-368, 567-582, 584-594, 665-673, 676-681). Dr. Lee consistently treated Plaintiff for recurring headaches, recurring spells of dizziness and near syncope, neck pain with neuralgia, and low back pain with sciatica. (Tr. 666). Plaintiff regularly suffers from severe migraines. The ALJ's only comment was that Plaintiff did not have frequent emergency room treatments or hospitalizations for her migraines. (Tr. 21). As Plaintiff correctly notes, however, people have headaches and severe migraines all the time but do not go to the emergency room every time they have a migraine but learn to cope with them by sleeping, taking medication, and other means. The Commissioner has failed to respond to these arguments.

This Court finds that remand is required so that the ALJ can properly consider the medical evidence presented by Plaintiff.  Further, the RFC assessment must be re-evaluated to ensure it incorporates all of the limitations supported by the entirety of the medical evidence.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED.

Entered: April 13, 2022.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court
